JS-6

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| HAAS AUTOMATION, INC., a California corporation,<br><br>Plaintiff,<br><br>v.<br><br>GUENTHER STEINER, an individual, and TEN SPEED PRESS, an imprint of PENGUIN RANDOM HOUSE LLC, a Delaware corporation,<br><br>Defendants. | Case No. 2:24-CV-03682-AB-JC<br><br>**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS [Dkt. No. 19]** |

Before the Court is a Motion to Dismiss filed by Defendants Guenther Steiner ("Steiner") and Ten Speed Press, an imprint of Penguin Random House LLC ("Ten Speed") (collectively, "Defendants"). (Mot., Dkt. No. 19.) Plaintiff Haas Automation, Inc. ("Haas Automation") filed an opposition (Dkt. No. 24), and Defendants filed a reply, (Dkt. No. 25). For the reasons discussed below, the Motion is **GRANTED**.[1]

---

[1] Having carefully considered the papers filed in connection with the Motion, the Court deemed the matter appropriate for decision without oral argument. Fed. R. Civ. P. 78; C.D. Cal. R. 7-15.

1

I. **BACKGROUND**[2]

This dispute arises out of Defendants' use of Haas Automation's registered trademarks in Steiner's book, *Surviving to Drive: A Year Inside Formula 1*, published by Ten Speed. (Mot. ¶¶ 20–21.)

**A. Haas Automation**

Haas Automation is a machine tool builder, founded by Gene Haas and headquartered in Oxnard, California. (*Id.* ¶¶ 1, 8.) As one might expect, Haas Automation sponsors the Formula One racing team Haas F1 Team ("Haas F1"), also founded by Gene Haas. (*Id.* ¶ 9.) Haas Automation also owns several trademarks ("Haas Marks") that are associated with the Haas F1 Team, which are used, in part, to promote Haas Automation and Haas Automation's goods and services. (*Id.* ¶¶ 9–10.)

The Haas Marks central to this dispute are shown below:

| Trademark Name | Country | Class | Status | App. Number | File Date | Reg. Number | Reg. Date |
|---|---|---|---|---|---|---|---|
| [H HAAS logo] | US | 7 | Registered | 78033812 | 11/3/2000 | 2573776 | 5/28/2002 |
| HAAS | US | 25, 41 | Registered | 87106392 | 7/16/2016 | 5235308 | 7/4/2017 |
| HAAS | US | 7, 35, 37 | Registered | 86143318 | 12/13/2013 | 4583627 | 8/12/2014 |
| [HAAS logo] | US | 7, 25, 35, 37, 41 | Registered | 87074321 | 6/16/2016 | 5221352 | 6/13/2017 |
| [H circle logo] | US | 7 | Registered | 77245326 | 8/2/2007 | 3425874 | 5/13/2008 |
| [H circle logo] | US | 41 | Registered | 86773987 | 9/30/2015 | 5775813 | 6/11/2019 |
| [H circle logo] | US | 25 | Pending | 98031380 | 6/7/2023 | | |

(Compl. ¶ 12.)

---

[2] All factual references derive from Plaintiff's Complaint or attached exhibits, unless otherwise noted, and well-pleaded factual allegations are accepted as true for purposes of this Motion. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

2

**B. Steiner, Ten Speed, and the Alleged Infringement**

Steiner is an individual, residing in North Carolina, who worked for Haas Formula LLC as the Team Principal of the Haas F1 Team for ten years. (Compl. ¶ 2; *see also* Mot. 3 (explaining that Guenther Steiner was the Team Principal of the Haas F1 Team, not just an employee); Request for Judicial Notice ("RJN") 4–5, Dkt. No. 19-2 (same).) Ten Speed, an imprint of Penguin Random House LLC, is a California-based publishing company. (Compl. ¶¶ 3, 21.)

In 2023, Steiner wrote, and Ten Speed published, *Surviving to Drive: A Year Inside Formula 1* (the "Book"), a book recounting his experiences as Team Principal of the Haas F1 Team during the 2022 Formula 1 season. (Compl. ¶ 20; Mot. 4.)

The Book's front cover, back cover, and several pages inside contain photographs of the Haas Marks as used in Formula 1 by the Haas F1 Team. (Compl. ¶¶ 20–21.) Some examples from the Book, including the front and back covers, are shown below:






3

(Compl. ¶ 21.)

Haas Automation contends that these and other photographs within the Book infringe on its trademark rights, so it filed this lawsuit. (*See generally* Compl.)

### C. Procedural Background

On May 3, 2024, Haas Automation filed its Complaint and brought the following four claims against Defendants: (1) Trademark Infringement under 15 U.S.C. § 1114; (2) Trade Dress Infringement under 15 U.S.C. § 1125(a)(3); (3) False Designation of Origin, Unfair Competition, False or Misleading Advertising under 15 U.S.C. § 1125(a); and (4) California common law unfair business practices. (Compl. ¶ 4.)

On June 28, 2024, Defendants moved to dismiss the Complaint, pursuant to Fed. R. Civ. P. 12(b)(6). (Mot.) Haas Automation opposed on July 12, 2024. (Opp'n.) And Defendants replied on July 19, 2024. (Reply.)

## II. LEGAL STANDARD

Federal Rule of Civil Procedure ("Rule") 12(b)(6) allows an attack on the pleadings for "failure to state a claim upon which relief can be granted." A complaint may be dismissed under Rule 12(b)(6) for the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988).

When ruling on a Rule 12(b)(6) motion, "a judge must accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). But a court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

*Iqbal*, 556 U.S. at 678. Deciding whether a complaint satisfies the plausibility standard is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

A court generally may not consider materials other than facts alleged in the complaint and documents that are made a part of the complaint. *Anderson v. Angelone*, 86 F.3d 932, 934 (9th Cir. 1996). However, a court may consider materials if (1) the authenticity of the materials is not disputed and (2) the plaintiff has alleged the existence of the materials in the complaint or the complaint "necessarily relies" on the materials. *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001) (citation omitted). The court may also take judicial notice of matters of public record outside of the pleadings and consider them for purposes of the motion to dismiss. *Mir v. Little Co. of Mary Hosp.*, 844 F.2d 646, 649 (9th Cir. 1988); *Lee*, 250 F.3d at 689–90.

If a court determines that a complaint should be dismissed, it must then decide whether to grant leave to amend. Under Rule 15(a), leave to amend "should be freely granted when justice so requires." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (cleaned up). A district court should generally grant leave to amend "unless it determines that the pleading could not possibly be cured by the allegation of other facts," making any potential amendments futile. *Id.* at 1130 (quoting *Doe v. U.S.*, 58 F.3d 494, 497 (9th Cir. 1995); *see also Leadsinger, Inc. v. BMG Music Publ'g*, 512 F.3d 522, 532 (9th Cir. 2008).

**III.   REQUESTS FOR JUDICIAL NOTICE**

Defendants request the Court take judicial notice of the following: (1) a true and correct copy of the Book, *Surviving to Drive: A Year Inside Formula 1*; (2) the complaint filed in North Carolina state court in *Guenther Steiner v. Haas Formula, LLC*, No. 24CV019758-590 (N.C. General Court of Justice, Superior Court, April 30, 2024); (3) the fact that Guenther Steiner was Team Principal of the Haas Formula 1 Team from 2014 through 2023; and (4) certain tweets from the Haas Formula 1 Team's Twitter account allegedly promoting the Book. (*See generally* Request for

Judicial Notice ("RJN"), Dkt. No. 19-2.) Haas Automation does not oppose or challenge the authenticity of these requests.

"As a general rule, a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion." *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001) (citation and quotation marks omitted). A court is, however, entitled to consider (1) documents incorporated into the complaint by reference and (2) matters subject to judicial notice. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

A court may take judicial notice of an adjudicative fact that is "not subject to reasonable dispute." Fed. R. Evid. 201. A fact is "not subject to reasonable dispute" if it is "generally known," or "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). A court may take judicial notice of matters of public record, but not "disputed facts contained in such public records." *See Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 999 (9th Cir. 2018); *U.S. ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc.*, 971 F.2d 244, 248 (9th Cir. 1992) (courts "may take judicial notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue").

With these maxims in mind, the Court **GRANTS** Defendants' requests and takes judicial notice of the Book, the complaint filed in state court in North Carolina, the fact that Guenther Steiner was Team Principal of the Haas Formula 1 Team, and the Tweets from the Haas F1 Team.

First, the Court takes judicial notice of the Book by way of incorporation-by-reference. *See Tellabs, Inc.*, 551 U.S. at 322; (*see generally* Compl. (referencing the Book throughout as the subject of the alleged infringement)). Second, the Court takes judicial notice of the complaint in state court in North Carolina because it is a filing in a judicial proceeding, but the Court does not accept as true allegations in that state court complaint. *See Khoja*, 899 F.3d at 999 (courts may not take notice of disputed

facts); *Robinson Rancheria Citizens Council*, 971 F.2d at 248 (courts may take judicial notice of proceedings in other courts). Third, the Court takes judicial notice of the fact that Guenther Steiner was the Team Principal of the Haas F1 Team for at least the 2022 Formula 1 season[3] because it is a widely known fact not reasonably subject to question and no party questions its authenticity. *See* Fed. R. Evid. 201(b); *Gerritsen v. Warner Bros. Entertainment Inc.*, 112 F. Supp. 3d. 1011, 1029 (C.D. Cal. 2015) (a court can take judicial notice of press releases and new articles to indicate what was in the public realm at the time, not whether the contents of the articles were in fact true) (citing *Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 960 (9th Cir. 2010)). And finally, the Court takes judicial notice of the Tweets from the Haas F1 Team regarding the Book because the Tweets are public, not subject to reasonable dispute, and their authenticity is not questioned. *See NRA of America v. City of Los Angeles*, 441 F. Supp. 3d 915, 933, n.6 (C.D. Cal. 2019) (taking judicial notice of the opposing party's Tweets from his official account); *Unsworth v. Musk*, No. 19-MC-80224-JSC, 2019 WL 5550060 (N.D. Cal. Oct. 28, 2019) (taking judicial notice of Tweets made from Elon Musk's official account).

## IV.  DISCUSSION

Defendants move to dismiss the Complaint, arguing that the use of the Haas Marks is protected by the First Amendment under the *Rogers* test or, in the alternative, as nominative fair use. (Mot. 6–10.) Whether the *Rogers* test applies is a threshold issue, and if it applies, the Court need not reach the alternative arguments. For the reasons discussed below, the Court **GRANTS** the Motion as to the *Rogers* test. Because of that, the Court need not reach the nominative fair use argument.

### A. The *Rogers* Test and Recent Precedent

The Lanham Act, 15 U.S.C. § 1051 *et seq.*, "creates a comprehensive framework for regulating the use of trademarks and protecting them against

---

[3] The exact length of Steiner's tenure as Team Principal is not appropriate for judicial notice at this stage, nor is it necessary for the Court's conclusion.

infringement, dilution, and unfair competition." *Punchbowl, Inc. v. AJ Press, LLC*, 90 F.4th 1022, 1028 (9th Cir. 2024). Typically, "courts apply a likelihood-of-confusion test to claims brought under the Lanham Act," which asks "whether a reasonably prudent consumer in the marketplace is likely to be confused as to the origin of the good or service bearing one of the marks." *Id.* (cleaned up). The *Rogers* test, however, accounts for background First Amendment concerns and creates a heightened showing for a trademark infringement claim to proceed when the work is an expressive work. *Id.*

The parties dispute whether the two-prong test set forth in *Rogers v. Grimaldi*, 875 F.2d 994 (2d Cir. 1989), applies at this stage.[4] The *Rogers* test requires the defendant to first "make a threshold legal showing that its allegedly infringing use is part of an expressive work protected by the First Amendment." *Punchbowl, Inc. v. AJ Press, LLC*, 90 F.4th 1022, 1028 (9th Cir. 2024). "If the defendant meets this burden, the Lanham Act does not apply unless the defendant's use of the mark (1) is not artistically relevant to the work or (2) explicitly misleads consumers as to the source of the content of the work." *Id.* (quotations omitted). "Neither prong is easy to meet." *Id.*

This dispute about whether the *Rogers* test applies here is a result of the Supreme Court's decision in *Jack Daniels Props. v. VIP Prods.*, 559 U.S. 140 (2023), which limited the test's application. The Supreme Court held that the *Rogers* test "is not appropriate when the accused infringer has used a trademark to designate the source of its own goods—in other words, has used a trademark as a trademark. That kind of use falls within the heartland of trademark law, and does not receive special First Amendment protection." *Id.* at 145. The Court explained further that *Rogers* does

---

[4] The *Rogers* test was adopted in the Ninth Circuit via *Mattel, Inc. v. MCA Records, Inc.*, 296 F.3d 894 (9th Cir. 2000) (applying the test to the song "Barbie Girl" that referenced the Barbie dolls line of toys from Mattel, Inc., and holding that the use of "Barbie" was artistically relevant and not explicitly misleading, meaning it did not suggest that it was produced by Mattel).

8

not apply "when an alleged infringer uses a trademark in the way the Lanham Act most cares about: as a designation of source for the infringer's own goods," even if the use of the trademark has other expressive content or conveys a message on top of source. *Id.* at 153, 157.

In *Jack Daniels*, the Court reviewed a Ninth Circuit decision that applied the *Rogers* test to a trademark dispute between the maker of Jack Daniels whiskey and the maker of a squeaking dog toy named "Bad Spaniels" that resembled a bottle of Jack Daniels whiskey and bore marks that looked remarkably like the Jack Daniels registered trademarks. *Id.* at 144, 148–52. The infringing party even conceded that it used the infringing marks as a source identifier, but they sought to shield themselves from liability by arguing the trademark usage was expressive and protected under *Rogers*. *Id.* at 160. The Supreme Court disagreed and held the threshold *Rogers* test was inappropriately applied because Bad Spaniels used the Jack Daniels trademarks as source identifying marks, even though the mark was expressive. *Id.* at 161. Notably, the Court expressed that the correct evaluation should have been the likelihood-of-confusion test. *Id.* at 153.

Recently, the Ninth Circuit applied that Supreme Court precedent in *Punchbowl*. 90 F.4th 1022. There, the Ninth Circuit held that the *Rogers* test did not apply to a lawsuit between two companies from different industries that both used the word "Punchbowl" in their business names. The first company was Punchbowl, Inc. which registered the Punchbowl® mark in 2006 and provides online greeting cards and invitations for businesses and individuals as part of a subscription-based service. *Id.* at 1024–25. The second company was AJ Press, which owned and operated *Punchbowl News*. *Id.* at 1025. *Punchbowl News* provides a subscription-based news publication on American politics and government, and AJ Press filed trademark applications to register the marks "Punchbowl News" and "Punchbowl Press" at the time of the lawsuit. *Id.* at 1025–26. Punchbowl, Inc. sued AJ Press for trademark infringement for use of the mark "Punchbowl," and AJ Press argued that it was

protected expression under *Rogers*. *Id.* at 1026.

In applying the recent Supreme Court precedent, the Ninth Circuit held that because AJ Press used the trademarked term "Punchbowl" as a mark—i.e., as part of its source identifying name—the *Rogers* test was not appropriate, despite "[t]he fact that the Punchbowl Mark involves a common English word." *Id.* at 1032. The Ninth Circuit emphasized that the likelihood-of-confusion test was the appropriate test when the infringing mark is used as a mark, noting that the common usage of "punchbowl" would be a relevant consideration in assessing the likelihood of confusion. *Id.*

### B. Additional Guidance on *Rogers*

There are several other cases that weighed whether the *Rogers* test was appropriate for a trademark infringement suit that prove helpful in ascertaining where this case falls with respect to applying *Rogers*. For example, in *Jack Daniels*, the Supreme Court mentioned an Eleventh Circuit opinion that correctly applied the *Rogers* test to dismiss a suit when "a sports artist depicted Crimson Tide's trademarked football uniforms solely to 'memorialize' a notable event in 'football history.'" *Jack Daniels*, 599 U.S. at 154 (citing *University of Ala. Bd. of Trustees v. New Life Art, Inc.* 683 F.3d 1266, 1279 (11th Cir. 2012)). And even though the artist sold the paintings with the Crimson Tide trademarks for a profit, the paintings were still entitled to First Amendment Protection under *Rogers* because "it 'is of course no matter that the dissemination [of speech] takes place under commercial auspices.'" *University of Ala. Bd. of Trustees*, 683 F.3d at 1276 (quoting *Smith v. California*, 361 U.S. 147, 150 (1959)) (alteration in original).

Closer to home, a recent decision in the Central District of California elected to not apply the *Rogers* test. *Mar Vista Entertainment, LLC v. THQ Nordic AB*, No. 2:23-cv-06924-MEMF (SSC), 2024 WL 3468933 (C.D. Cal. July 8, 2024). The court in *Mar Vista Entertainment* found the *Rogers* test inapplicable at the motion to dismiss stage in a trademark dispute between THQ, the owner of the rights to the *Alone in the Dark* videogame franchise and associated trademarks, and Mar Vista

1   Entertainment (among others) who released a horror film entitled *Alone in the Dark*.
2   *Id.* at *1. The court, relying on the allegations in the amended complaint, found that
3   the owners of the horror film selected the *Alone in the Dark* name to mislead
4   consumers about the source of the film. *Id.* at *2–3. Critically, the use of the
5   trademark "[fell] within the heartland of trademark law" because the infringing party
6   used the trademark as a source identifying mark. *Id.* at *2.
7           For a final example, in *Down to Earth Organics, LLC v. Efron*, the Southern
8   District of New York held the *Rogers* test was applicable to the alleged trademark
9   infringement by Netflix and Zac Efron of the phrase "Down to Earth" for the
10  documentary series entitled *Down to Earth with Zac Efron*. No. 22-CV-06218 (NSR),
11  2024 WL 1376532, *4 (S.D.N.Y. Mar. 31, 2024). That court found that the defendants
12  were "undoubtedly using 'Down to Earth' simply to identify the subject matter and
13  tone of the Series," thus subjecting it to the heightened First Amendment scrutiny of
14  the *Rogers* test. *Id*. at *4–5.
15          **C.     The *Rogers* Test is Appropriate Here**
16          Here, the question is whether Defendants use the Haas Marks as trademarks, or
17  source identifying marks, with respect to the Book. This Court finds they do not.
18          Defendants' use of the marks is subject to the *Rogers* test because Defendants
19  do not use the Haas Marks as marks. As an initial matter, there is no question that the
20  Book is an expressive work. *See Rogers*, 875 F.2d at 997 ("Movies, plays, books, and
21  songs are all indisputably works of artistic expression"). Naturally, the Book details
22  Steiner's experience as Team Principal of the Haas F1 Team.  That necessarily
23  requires him to mention the Haas name. As many sports biographies do, it includes
24  photographs of the season, which will undoubtedly show the Haas Marks.
25          Compared to *Jack Daniels*, where the Bad Daniels squeaky dog toy used the
26  Jack Daniels marks as a source identifier, here, the use of the Haas Marks is not used
27  to tell the consumer who published the book or the source of the book. Defendants do
28  not use the Haas name as the title, publisher name, or as a source identifying moniker,

1  unlike the Defendant in *Punchbowl*. And they do not attempt to mislead consumers, as
2  the Defendant did so in *Mar Vista Entertainment*, despite Haas Automation's
3  conclusory allegations. (*See* Compl. ¶¶ 47, 55.) Instead, it merely tells the consumer
4  what the Book is about and who the author worked for, similar to *Down to Earth*
5  *Organics*.
6        Accordingly, the *Rogers* test is applicable here because Defendants do not use
7  the Haas Marks as a source identifying mark. So, the next steps require the Court to
8  determine whether the use is artistically relevant and not explicitly misleading.

         **i.**    **The Book is Artistically Relevant**

10        The use of the Haas Marks is artistically relevant to the Book. The standard
11  here is whether the use of the mark "has no artistic relevance to the underlying work
12  whatsoever." *Punchbowl*, 90 F.4th at 1028 (citing *E.S.S. Ent. 2000, Inc. v. Rock Star*
13  *Videos, Inc.*, 547 F.3d 109, 1099–1100 (9th Cir. 2009)). In other words, some artistic
14  relevance "merely . . . above zero." *Id.*
15        Here, the use of the Haas Marks is artistically relevant to the Book. The Book
16  recounts Steiner's experiences as Team Principal of the Haas F1 Team during the
17  2022 season. Using photos that include the Haas Marks is an artistic choice to provide
18  additional context about the 2022 season with the Haas F1 Team.

         **ii.**   **The Book is Not Explicitly Misleading**

20        The use of the Haas Marks is also not explicitly misleading. "[T]o be 'explicitly
21  misleading' under *Rogers*'s second prong, there must be an explicit indication, overt
22  claim, or explicit misstatement about the source of the work." *Punchbowl*, 90 F.4th at
23  1028 (citing *Dr. Seuss Enters., L.P. v. ComicMix LLC*, 983 F.3d 443, 462 (9th Cir.
24  2020)). For example, titling a book "Jane Fonda's Workout Book" or "an authorized
25  biography" can explicitly misstate who authored or endorsed the book, a title that
26  "include[s] a well-known name" is not explicitly misleading if it only "*implicitly*
27  suggest[s] endorsement or sponsorship." *Id.* (citing *Rogers*, 875 F.2d at 999–1000).
28        Here, there is no explicit indication, overt claim, or explicit misstatement that

the "source of the work" is Haas Automation. While there's an argument the photo on the cover implicitly suggests endorsement or sponsorship, there is no explicitly misleading statement or suggestion by way of the Haas Marks.[5]

Accordingly, Defendants' use here of the Haas Marks is protected under *Rogers*. Defendants' Motion is therefore **GRANTED**.

### D. State Law Claim

Because Haas Automation's federal claims are dismissed with prejudice, the Court declines to exercise jurisdiction over the remaining state law claims. *See* 28 U.S.C. § 1367(c)(3). Accordingly, the California common law unfair business practices claim is also dismissed.

### E. Leave to Amend

If a motion to dismiss is granted, "[the] district court should grant leave to amend even if no request to amend the pleading was made[.]" *Ebner v. Fresh, Inc.*, 838 F.3d 958, 963 (9th Cir. 2016) (citation omitted). However, leave to amend should be denied when the plaintiff could not amend the complaint to state a viable claim without contradicting the complaint's original allegations. *See Garmon v. County of Los Angeles*, 828 F.3d 837, 845–46 (9th Cir. 2016). The question to consider is whether amendment is futile.

Because Haas Automation can make no additional allegations to avoid the *Rogers* test, this Court finds that amendment is futile. An amended complaint could not show that Defendants use the Haas Marks as source identifying trademarks, and it could not overcome *Rogers*. Accordingly, the Court does not grant leave to amend.

### F. Attorneys' Fees Award

Defendants also seek attorneys' fees pursuant to 15 U.S.C. § 1117(a). The Lanham Act permits an award of attorneys' fee to the prevailing party in "exceptional cases." 15 U.S.C. § 1117(a). The Ninth Circuit has held that district courts should

---

[5] In any event, an argument about implicit endorsement is weakened by the explicit endorsements of the Book provided by Haas Automation via its official Twitter account. (*See* RJN, Ex. E.)

examine the "totality of the circumstances" to determine if a case is "exceptional." *SunEarth, Inc. v. Sun Earth Solar Power Co.*, 839 F.3d 1179, 1181 (9th Cir. 2016). Some nonexclusive factors courts should consider include "frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance compensation and deterrence." *Id.* (quoting *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 554 (2014)).

In evaluating the totality of the circumstances for this case, the Court does not find this case exceptional. It was neither frivolous nor objectively unreasonable for Haas Automation to test where the line is after the recent decisions in *Jack Daniels* and *Punchbowl*. While the motivation may have stemmed from Steiner's prior employment with the Haas F1 Team and his dismissal, that is not clear at this time and certainly does not outweigh the objective reasonableness of the factual and legal components of the case. Moreover, Defendants only provide two paragraphs of support for their motion for attorneys' fees, and they do not attempt to explain why this case is exceptional.

The Court therefore **DENIES** the motion for attorneys' fees.

## V. CONCLUSION

For the foregoing reasons, the Motion to Dismiss is **GRANTED** and the Complaint is **DISMISSED** without leave to amend. Defendant's Motion for attorneys' fees is also **DENIED**.

**IT IS SO ORDERED.**

Dated: September 25, 2024

_____
HONORABLE ANDRÉ BIROTTE JR.
UNITED STATES DISTRICT COURT JUDGE